next case on this afternoon's docket is in re marriage of Jeremy Bennett and Heather Louise Bennett we have Julie Thompson for the appellant and we have Francis Salimi Salami sorry Salami for Miss Bennett you may proceed Miss Thompson when you're ready may it please the court and counsel my name is Julie Thompson I'm here representing the appellant Jeremy Bennett present in your court today we are here because the trial court denied a motion to vacate a default judgment modified custody of a minor child these parties were married in 1999 and in 2002 they were divorced they had at the time a three-year-old daughter her name is Jade by agreement a joint custody order was entered wherein Jeremy was named as the primary residential parent for Jade and Heather the mother of Jade would have visitation in May 2009 Heather filed a pro se petition to modify custody on July 7 a hearing was held Jeremy did not attend the hearing and by default the court entered a modification of custody placed sole custody with Heather gave Jeremy reasonable visitation as agreed upon between the parties on July 15 eight days later Jeremy filed for his counsel a petition to vacate that default judgment and a hearing was held in August at that August hearing the focus of the petition to vacate the default and the focus of the evidence and testimony from both attorneys at that's what everybody was focused on that's what most of the evidence and testimony presented was trial court found that Jeremy had that probably the Jeremy did have notice of the hearing and because he had failed to attend that hearing after having noticed the trial court refused to vacate the default judgment before this court today you're claiming that the petition to that is disputed and the evidence who's who's your evidence that that they were that was followed they were living together only your client and other witnesses indicate that that's not true that it was filed after we're living together at the time that petition was filed our position on it simply is this judge that if under the case law in Illinois the question is not whether or not Jeremy got notice the question is whether or not substantial justice was done between these parties by the entry of this default order modifying custody and I dispute that on the date of the hearing she went with her stepmother I'm not sure who and he gave her his wage statement his testimony is that that did not occur did not occur and there's at least two witnesses that say it did occur she testified that he did in fact give her his his paycheck step the day of the trial his stepmother testified that Heather went into Jeremy's house and came out with that paycheck not that I saw her him hand it in fact I think stepmom even said she didn't know for sure that Jeremy was there she had seen him there earlier that morning so that one it's really Heather's word against Jeremy's on whether or not the paycheck service and again to our position on this is ultimately it doesn't make a difference whether or not Jeremy had noticed what makes the difference here is whether or not substantial justice was done between these parties and to support that position I would refer the court to Benzer versus Carmen's pizza where in a defendant was sued for $100,000 and in he was personally served with a summons saying answer within 30 days or risk a default entry of a judgment against you he ignored it and judgment by default was taken against him in the sum of $100,000 once that happened that defendant went and hired counsel filed a petition to vacate the default and the appellate court in holding that the default should have been vacated said what matters is whether or not substantial justice was done between these parties the defendant in that case admitted yes I had noticed I ignored it because I didn't understand the significance of it he only understood it apparently after $100,000 was served on him the court vacated that judgment they said that substantial justice was not done that the court abhors a vacuum would prefer a trial on the merits and you have to balance the severity of the harm that occurred to the defendant against the hardship on the plaintiff if the plaintiff is required to prove the case and that and that's a case where the law allows for service by regular mail yes he was personally served with summons and this court has gone on even further in making these types of decisions and I would say back to you Stotler Drug versus Monroe and Bank and Trust versus Lime Pilot Benji both fifth district decisions where this court has held Illinois courts have a history of being liberal with respect to vacating default judgments this was not liberal this was a rubber stamp he got noticed therefore he loses and that is not the question that the trial court should have been asking the question is did this do substantial justice and the answer to that question has to be no does it or should it make a difference that this is a child custody case I think the best interest of the child is paramount I think it's more significant here that what Jeremy lost was custody of his child what in in Herman's people what the man lost was $100,000 now not to diminish $100,000 but how do you put a price tag on custody of your child he went from primary residential parent with joint custody to sole custody to Heather and reasonable visitation to Jeremy not even a specific schedule of visitation so when Heather tells him no he doesn't get to see the child now is that fair to Jeremy no it's really not fair to the child she was 10 years old when this decision was made since she was three she has been primarily in the custody of the father and this court by default changed that custody without giving any consideration to what is in the child's best interest after finding that Jeremy had noticed and therefore he should have been there and he wasn't the currently exists and you ask the question was substantial justice done between these parties the answer has to be no and we would ask this court vacate this default the denial of the default remand this cause for either entry of an order vacating that default judgment putting things back as they were and letting Heather file a motion if she believes she has grounds and going forward and the normal procedures where the court will make a decision based on the child's best interest or remand it and have the trial court have a new hearing where the actual question is was substantial justice done here. Let me ask you a question. Eight days after the order of modification your client filed a motion to vacate. He did. The trial judge treated it as a petition to modify and found that it was not timely. Is that correct? He said that court finds that the petition to modify custody filed by the petitioner that would be the father is not timely. He filed two, your honor. He filed a petition to vacate and a petition to modify. Okay. And the petition to modify was stricken and the court proceeded only on the motion to vacate. Okay. So in the motion to vacate he denied it but did not find it was based upon untimeliness or too soon. No, sir. He denied that based on the belief that Jeremy had received notice. Okay. Thank you, Ms. Thompson. You'll have the opportunity to rebut. Ms. Linden, I don't think I got it right yet. Would you say your name one more time? Except Judge Stewart. My name is Fran Salami. May it please support the council. I'm here for the appellee, Heather Bennett. I also represented her in the motion to vacate hearing. We have really don't have any dispute that the case law in the state of Illinois does discuss 1301E motion to vacate that the, what the court must review, the trial court must review is whether a substantial justice has been done and whether the trial court has used its discretion. A more recent case, which is Deutsche Bank decided the first district in 2006, it's more stated in this way, when making a review of determinations made with a decision to deny the motion, was a fair and just result, which did not deny the moving party substantial justice. And I think if we look at what the motion to vacate stated in this case, that and we look at it and we look at what other courts have said, that each case must be determined on the facts of that is presented. I think that the motion to vacate by Mr. Bennett was specific. It stated that Ms. Bennett was living with him at the time that she had tampered with his mail and he had not received it, that she then fraudulently went before the court knowing that she tampered with his mail and that he had no knowledge of that particular hearing and represented to the court that he knew and therefore got her default judgment through fraudulent means. And I think the testimony that was presented at the hearing on the motion to vacate order was clear that she brought a couple witnesses in that testified that she was not living there at the time, that she was living in Shawneetown with her parents, and that she did not move to live with him until the first part of July, probably about July 8th or 9th. And so, and by his own testimony, the court noted that even he said that she had not started living with him until May 27th and May 28th. And I guess the question then becomes whether by right, when you file a 1301E motion, you have a right to vacate, and that no matter what you allege in your motion, you have a right to have the default judgment vacated. And I think in this matter... Well, maybe another question is, are you held to only what you allege? I mean, if you allege that it was a fraudulent, that she fraudulently concealed, do you have to prove that, even if you've proved that substantial justice wasn't done? Well, I think this is the way the trial court probably took it, Your Honor, was that he had not proven up the allegations of his motion. And the court itself, in its decision, stated that it found Ms. Bennett and her witnesses more credible than... I mean, Ms. Bennett and her witnesses more credible than Jeremy Bennett and his witnesses. And on that basis, when I wrote my brief, I thought that it's more importantly to look at whether the movement has the burden of establishing the allegations of his motion. I think that's one of the questions that's here. And it's clear that to the trial court, he didn't prove up his allegations. It seems a little odd to believe that a custodial parent, in effect, didn't care enough to show up for a hearing on custody that he had notice for, but eight days later, after the order's entered, is in there fighting like crazy over this order. Well... And doesn't it seem like... Yes, and one of the issues that was presented, I think that was brought forward, was the order that the court entered, the default order that the court entered, did assign child support. And that is what one of the issues that Ms. Bennett brought up as the reason for him moving to vacate because of the child support that was assessed against him. But the... I guess the question is really... Let me ask you a question here. Was there any evidence about why she ended up with his wage statement if he didn't know she was going into court to try to get custody and child support? Well, other than she would have had to have been living there, and as he said, he left his wage statement laying around, and she would have just picked it up. She just picked it up. So it would have to be that she would have been living at the house and had access to them. As it was, she testified that she went with his stepmother to the house and basically went in and he gave it to her. Can I ask a question about that? Was the testimony that he gave it to her knowing she was going to go to court and use it? Yes. Okay. Yes. And, therefore, I believe the argument that the appellant was bringing forward... Let me ask another question. Let me ask another question, Ms. Salome. If your client's premise was that he gave her the wage statement so she could take it to court, why would he be upset about being ordered to pay child support? What would the wage statement have been for? And I guess that's kind of the question that I can't answer, Your Honor, is why all of a sudden after all this occurred was he in there... If what my client presented was the truth at the hearing, why all of a sudden is he so adamant that he wants to come back in? And I really don't know. All I know is that the court allowed him great discretion in his testimony even testifying about other matters that were not before the court that were occurring in Jackson County, and still the court determined that he was not as credible as she and her witnesses. On that basis, also, it's true that they had a joint custody agreement, but I think that the record shows that these two people lived together a substantial amount of time after that divorce in which both of them were with the child on a fairly continuous basis. So what I'm asking the court, based on the fact that the trial court did give a fair hearing, allowed him to testify pretty much what he wanted to state, even other allegations based out of a Jackson County incident, that he failed to prove up his allegations, and the court rightly on determining that basically found him not credible. I guess I would ask the question is if he alleges these issues that he claims are true and they're not credible, how is the court supposed to find, is the court supposed to vacate the default order based on some sua sponte type thing saying, well, I'm doing it just because I want to, or I'm doing it because I feel that, you know, it was a modification of custody, and that should have been had a trial. I guess it makes us want, I'm just trying to determine how was the court going to make a decision when the allegations were in the motion for reversal and for, you know, vacating, and those allegations weren't proven up, and therefore the court made a decision based on that and denied the motion to vacate. And I feel that was a correct decision and I would ask the court to affirm the trial court's decision. Thank you. Ms. Thompson. The vast majority of Jeremy's petition to vacate this judgment was based on the allegation that he had not received notice of the hearing date for this modification. The other thing that Jeremy did allege in that motion was that he did not believe that it was in the minor child's best interest that sole custody of her be awarded to Heather. I think that is the paragraph in that petition that saves this, in the sense that he brought to the trial court's attention not just, hey, judge, I didn't get notice, but, hey, this underlying judgment is not in the best interest of my child. This court can look at that paragraph of that petition, find that there was no substantial justice done between these parties because no hearing on the best interest was ever held, and vacate the trial court's denial of this motion. The evidence that's filed was that the parties off and on lived together after the divorce and prior to the filing of this petition to modify that Heather filed. What about the testimony of Petty? Wasn't there some independent witness who supported the fact that he had already moved from Heather's parents' home to the Springer Ridge Road? There was, I believe there was, Your Honor, testimony from a man named Paul Petty on behalf of Jeremy that Jeremy had moved out of the home at Springer Ridge Road shortly after this judgment was entered. After? Is that the question? I'm trying to find out when Petty says that he moved. He moved in there. I don't know that Petty says when he moved in there, Judge. I think the only testimony on that was from Jeremy himself, and that was the 18th or 19th of May is when he moved there, and he produced a change of address card showing effective May 20th for the date of his move. I think that the trial court's finding that Jeremy's testimony or witnesses were not credible as to whether or not he got noticed, again, is not the underlying question for this court to be addressing. I think the underlying question is if substantial justice was done, and it does not make any sense. Heather's story in this case doesn't make any sense. She says he had noticed the day of the hearing. He hands me his paycheck stub so I can go to court because he knows I'm going to change custody and get child support. The order is entered on July the 7th. Testimony at trial is from Jeremy that he is made aware of the entry of that order on July 13th when Heather calls him and tells him, look under the microwave. That's where he finds his copy of this court order. On July 15th, his attorney files a petition to vacate. Two days later, two days later, he's in there saying, Judge, I don't know how this happened, but this should not have happened. It's incredible to believe that he would have known about it, agreed with it, handed her a paycheck stub, and then anywhere between two days and eight days at the outside later, he's in court seeking relief. Well, he got stuck with $455 in child support. But if her story is true, he knew he was going to get stuck with child support the day it happened. He didn't know how much, did he? 20% of his net. Did he know that was the law? Is there evidence in there? I would suspect so, Judge. I mean, he had to know that at least some money was going to be coming out for child support. Other than Heather's testimony to that effect, there is no evidence to suggest that Jeremy's concern here is not paying for his child. He's been primarily the sole provider for this child since that divorce was entered, and there's been no evidence to contradict that presented at all. What we believe should happen here is that there should be a hearing. If Heather wants a modification of custody, then she can file a petition. The court can order mediation to try to resolve it and have a hearing to determine what's in the best interest of this child, because the fight here should be directed towards what is the best thing for her. And in all of this, she's been left out. Nobody's paid any attention to what effect, if any, this has had on Jade and is this good for her. And if we are going to vacate a $100,000 judgment when a man was personally served with notice and tells the trial court, I blew it off because I didn't think it was important, then how can we say that the loss of custody of your child is any less significant than that? We'd ask the court reverse. Thank you. Thank you both for your arguments and briefs. We'll take the matter under advisement and render rulings, of course. Thank you. This court stands in recess until 9 o'clock tomorrow morning. All rise. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Well, I guess, I'll see you back here with her? Yep. I'll be here in the morning. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.